IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **CRYSTAL BAILEY,** | : |
| **Plaintiff,** | : |
| v. | : |
| **UNITED STATES OF AMERICA,** *et al.*, | : Civil No.: WMN-03-367 |
| **Defendants.** | : |

...oOo...

## MEMORANDUM IN SUPPORT OF DEFENDANT'S
## MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

The United States of America, a defendant herein, by its attorneys, Thomas M. DiBiagio, United States Attorney for the District of Maryland, and John W. Sippel, Jr., Assistant United States Attorney for said District, hereby submits this Memorandum in Support of its Motion to Dismiss or, in the alternative, for Summary Judgment.

### I. INTRODUCTION

This case is an action filed under the Federal Tort Claims Act for alleged personal injuries sustained by Plaintiff when she was visiting a property owned by the United States Department of Housing and Urban Development and managed by DIY, Inc., a defendant in this action. As discussed more fully below, under the independent contractor and discretionary function exceptions to the Federal Tort Claims Act, Plaintiff's claims against the United States are barred and, therefore, must be dismissed.

### II. FACTS

On or about September 23, 1999, the United States Department of Housing and Urban Development ("HUD") entered into a Real Estate Asset Manager ("REAM") contract with DIY, Inc.

("DIY") to manage properties in the Baltimore area on behalf of HUD. *See* September 23, 1999, Award/Contract, attached hereto as Exhibit "A;" Declaration of Maureen Musilli, attached hereto as Exhibit B. Real Estate Asset Managers are real estate brokers or other qualified individuals who contract with HUD to arrange for and supervise the management, rehabilitation, and maintenance of HUD-acquired properties.

On or about June 17, 1999, foreclosure proceedings were instituted against the mortgagor of property located at 1940 Inverton Road in Baltimore, and on or about October 29, 1999, the mortgagee, Mercantile Bank,[1] conveyed title to the Inverton Road property to the Secretary of HUD.[2] *See* Lexis-Nexis Property Transfer Record, attached hereto as Exhibit C. On or about November 3, 1999, HUD assigned the Inverton Road property to DIY under the REAM contract. *See* Ex. A. Under the terms of the REAM contract, DIY was responsible to oversee the repair and maintenance of the Inverton Road property. *Id*. In addition, DIY was responsible for inspecting the property, and eliminating any safety hazards. *Id*. Among other responsibilities, the REAM contract

---

[1] At the time of conveyance, the mortgagee name was Roosevelt Bank.

[2] Title II of the National Housing Act, 12 U.S.C. § 1701, *et seq*., authorizes the Secretary of HUD to insure mortgages on single-family residences through the mortgage insurance program. These mortgages are insured by a revolving fund which provides the money needed to pay claims to holders of insured mortgages when the mortgage goes into default. The fund is replenished by the insurance premiums paid by the mortgagors, income from investments held by the fund, and the proceeds from the sales of the properties whose mortgages have come into HUD's inventory. The disposition of these properties is authorized by § 204(g) of the National Housing Act, 12 U.S.C. § 1710(g).

Under this program, when a mortgagor defaults on obligations under an FHA-insured mortgage and the mortgagee forecloses, the mortgage insurance contract between HUD and the mortgagee permits the latter to submit a claim for insurance benefits. 24 C.F.R. Part 203, Subpart B. Except in certain circumstances, the mortgagee forecloses on the mortgage and deeds title of the property to HUD in order to file a claim for insurance benefits. *See* 12 U.S.C. § 1710(a); 24 C.F.R. § 203.350-351. After acquiring title, HUD attempts to sell the property. After settlement on the property and the payment of ordinary and customary fees, all surplus monies are returned to the FHA-mortgage insurance fund.

required DIY to perform the following services: inspect properties on initial listing within 20 days of contract commencement; notify HUD of damage due to vandalism, fire, and other causes; remove and dispose of interior and exterior trash; eliminate conditions which present safety hazards within 24 hours of discovery; provide listing of needed repairs, with cost estimates; solicit bids for repairs; routinely inspect properties and document such inspections with HUD inspection report (HUD-9519) every 15 days after initial inspection; and provide assistance to interested parties regarding properties available for sale. *Id.*

HUD's responsibilities with respect to properties managed by the REAM, including the 1940 Inverton Road property, are: placing advertisements in an attempt to sell the properties, and determining the sales disposition of certain property, including the price of the property, whether it was sold as-is, or with or without FHA-insurance or escrow repairs. *See* Ex. A.

Plaintiff alleges that on February 13, 2000, she was viewing the 1940 Inverton Road property. *See* Amended Complaint, ¶ 5. Specifically, Plaintiff alleges that she ascended a wooden ladder to view the attic of the residence and the ladder collapsed, causing her to fall and sustain injuries. *Id*.

### III.  LEGAL STANDARDS

**A.   Motion to Dismiss under Fed. R. Civ. P. 12(b)(1)**

The determination of jurisdiction is a threshold issue, requiring this Court to resolve the government's motion to dismiss first. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). "Jurisdiction is the power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the case." *Id*. When a court's subject matter jurisdiction is challenged in a Federal Tort Claims Act ("FTCA") case, the plaintiff

bears the burden of persuasion and must demonstrate an unequivocal waiver of sovereign immunity. *See Williams v. United States*, 50 F. 3d 299, 304 (4th Cir. 1995)(citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3rd Cir. 1991)). *See also Lumpkins v. United States*, 215 F. Supp.2d 640, 642 (D. Md. 2002)(Blake, J.); *McKeel v. United States*, 178 F. Supp.2d 493, 496 (D. Md. 2001)(Davis, J).  In ruling on a 12(b)(1) motion, the court is free to consider and weigh evidence outside of the pleadings to determine its authority to hear the case.  *Id*.

**B.    Motion for Summary Judgment**

A party is entitled to summary judgment if the evidence in the record "show[s] that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The Supreme Court has emphasized that the "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

Trial courts should enter summary judgment "against any party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Id*. at 322.  Where the plaintiff fails to meet this burden, "a defendant should not be required to undergo the considerable expense of preparing for and participating in a trial."  *Hayes v. Hambruch*, 841 F. Supp. 706, 708 (D. Md. 1994) (Harvey, J.), *aff'd,* 64 F.3d 657 (4th Cir. 1995).  The Fourth Circuit has emphasized that trial judges have an "affirmative obligation. . .to prevent factually unsupported claims and defenses from proceeding to trial."  *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987).  If the opponent of a summary judgment does not have a reasonable prospect of prevailing the parties should not be

subjected to the time and expense of trial. *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572 (7th Cir. 1989).

## IV. ARGUMENT

**A.     The independent contractor exception to the FTCA bars Plaintiff's claims against the United States.**

The FTCA allows a plaintiff to sue the United States for damages resulting from the torts of Government employees acting within the scope of their employment to the extent that a private party would be liable for those acts under state law. *Lumpkins*, 215 F. Supp.2d at 643 (citing *Williams*, 50 F.3d at 304); 28 U.S.C. § 1366(b). Accordingly, the FTCA serves as a limited waiver of the sovereign immunity of the United States, allowing the Government to be held liable for the negligent acts or omissions of federal agents or employees. *Id*.; 28 U.S.C. § 2671. The FTCA does not, however, waive the Government's sovereign immunity for injuries resulting from the tortious conduct of independent contractors. *Id; see also Williams*, 50 F.3d at 307.

Federal law governs the issue of whether an individual is a government employee or an independent contractor under the FTCA. *Logue v. United States*, 412 U.S. 521, 528 (1973). The Supreme Court has held that "a critical element in distinguishing an agency [or government employee] from a contractor is the power of the Federal Government 'to control the detailed physical performance of the contractor.'" *United States v. Orleans*, 425 U.S. 807, 814 (1976) (quoting *Logue*, 412 U.S. at 528). For a contractor to be an employee of the government for purposes of the FTCA, the Government must have exercised "day-to-day" operational control over the contractor's activities. *Logue*, 412 U.S. at 530; *Williams*, 50 F.3d at 307 (United States not liable under FTCA for acts of contractor because it neither supervised nor controlled day-to-day operations or custodial duties); *Becker v. Department of the Army*, 981 F. Supp. 905, 907 (D. Md. 1997)(Young, J.)

(because the United States did not have the right to control detailed physical performance of contract, other party is independent contractor and court has no subject matter jurisdiction under FTCA).

In the case before this Court, Plaintiff's claims are barred by the independent contractor exception. It is undisputed that DIY was hired by HUD as an independent contractor to manage the property located at 1940 Inverton Road in Baltimore. *See* Ex. A. The property was under the management and control of DIY, including management, maintenance and inspection, and repair duties. *Id*.; Ex. B. Specifically, DIY was responsible for, among other things, "[c]hecking for and, if found, correct[ing] safety and health hazards, " "[p]rovid[ing] on-going maintenance to properties," and "[k]eeping property free of safety and health hazards." Ex. A, pp. 15-16.

Although HUD retained authority to oversee DIY's performance under the contract, HUD was not involved in the day-to-day operations of DIY or DIY's management of the subject property. While HUD does conduct random inspections of the properties in its inventory, the basic purpose of such inspections is to monitor REAM compliance with the REAM contract. These random inspections did not relieve DIY of its extensive obligations under the contract, nor did the random inspections suggest evidence of a daily presence or direct involvement in the day-to-day management of the subject property sufficient to dilute DIY's effective control of the premises. *See, e.g., Logue*, 412 U.S. at 526-27 (federal agency's right to set standards and to make inspections to ensure compliance do not constitute sufficient control over the contractor to warrant a finding that the contractor is an employee of the United States fo purposes of the FTCA).

Because DIY was hired by HUD as an independent contractor to serve as the REAM of the subject property, as well as to fulfill the responsibilities for maintenance, repair and marketing of

the subject property, DIY is an independent contractor and not an employee of the United States within the purview of the FTCA. Moreover, there is no evidence to suggest or establish that the Government was involved in the day-to-day operations or management of DIY. Therefore, Plaintiff is barred from bringing suit against the United States in this action, and the Court must dismiss Plaintiff's Amended Complaint against HUD.

**B.    Plaintiff's claims against the United States are barred under the discretionary function exception to the FTCA.**

As stated above, this Court has jurisdiction to hold the United States liable under the FTCA only to the extent that the United States has waived its sovereign immunity. *See Rich v. United States*, 158 F. Supp.2d 619, 628 (D. Md. 2001)(Chasanow, J.) (citing 28 U.S.C. §§ 1346(b), 2674; *Jackson v. United States*, 77 F. Supp.2d 709, 712-13 (D. Md. 1999)(Young, J.)). The FTCA does not, however, waive liability of the United States for claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty in the part of a federal agency or employee of the Government, whether or not the discretion involved be abused." *Rich*, 158 F. Supp.2d at 628 (quoting 28 U.S.C. § 2680(a)).

The Supreme Court adopted a two-pronged test for determining the applicability of the discretionary function exception. *See United States v. Gaubert*, 499 U.S. 315 (1991). First, the Court must determine whether the alleged acts or omissions are discretionary in nature, i.e., those involving judgment or choice. *Gaubert*, 499 U.S. at 324. The second prong requires that the discretion be "based on considerations of public policy." *Gaubert*, 499 U.S. at 316. If the discretionary actions are determined to be in furtherance of public policy or a regulatory scheme, then the exception applies. *Id*.

In this case, HUD utilized its discretion to hire an independent contractor for the

management, maintenance and repair of the subject property. The Fourth Circuit has held that engaging custodial and maintenance services falls within the discretionary function exception to the FTCA. *Becker*, 981 F. Supp. at 907 (citing *Williams*, 50 F.3d at 309). In *Williams*, the court noted that the decision to hire an independent contractor has long been held a discretionary function. *Williams*, 50 F.3d at 310 (citations omitted). Accordingly, the discretionary function exception deprives this Court of subject-matter jurisdiction over Plaintiff's claims against HUD and Plaintiff's claims against the United States must be dismissed.

## V. CONCLUSION

Based upon the foregoing, plaintiff Crystal Bailey's claims against the United States are barred under the independent contractor and discretionary function exceptions to the Federal Tort Claims Act. Accordingly, this Court must dismiss Plaintiff's Amended Complaint as to the United States.

Respectfully submitted,

Thomas M. DiBiagio
United States Attorney


By:_____/s/_____
John W. Sippel, Jr.
Assistant United States Attorney
Bar No. 25484
6625 United States Courthouse
101 West Lombard Street
Baltimore, Maryland 21201-2692
Tel:     (410) 209-4812
Fax:     (410) 962-2310